IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

DABIN KI,                                          *

     Plaintiff,                                 *

v.                                                           Case No.: GJH-20-130

                                    *

KRISTINE L. SVNICKI, CHAIRMAN
UNITED STATES NUCLEAR                              *
REGULATORY COMMISSION,
                                    *

     Defendant.

                                    *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff DaBin Ki brought this civil action against the United States Nuclear Regulatory Commission (the "NRC"), alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ECF No. 17. Pending before the Court is Defendant's Motion to Dismiss or for Summary Judgment.[1] ECF No. 21. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Defendant's Motion to Dismiss or for Summary Judgment is denied.

## I.     BACKGROUND[2]

In 1974, to ensure the safe use of radioactive materials for beneficial civilian purposes while protecting people and the environment, Congress created the NRC. ECF No. 17 ¶ 7. The NRC regulates commercial nuclear power plants and other uses of nuclear materials through

---

[1] Also pending before the Court are three consent motions for extension of time to file, ECF Nos. 20, 22, 28, which the Court now grants.

[2] Unless otherwise stated, the background facts are taken from Plaintiff's Amended Complaint, ECF No. 17, and are presumed to be true.

licensing, inspection, and enforcement of its requirements. *Id.* Plaintiff DaBin Ki, an Asian-American woman, is an employee of the NRC and has been since September 28, 2008. *Id.* ¶¶ 6, 9. Plaintiff currently works in the NRC's Office of Nuclear Reactor Regulation ("NRR"), Division of Reactor Oversight ("DRO"), Operator Licensing and Human Factors Branch ("IOLB"). *Id.* ¶ 8. However, during the time relevant to her Amended Complaint, from 2016 to 2018, Plaintiff served on a detail to the PRA Operations and Human Factors Branch ("APHB") within the Division of Risk Assessment ("DRA"), NRR. *Id.* ¶ 10. During Plaintiff's detail, her supervisor was the APHB Branch Chief, who from 2016 until March 2018 was Sunil Weerakkody, a Sinhalese male, and from March 2018 to September 2018 was Christopher J. Fong, a "Caucasian/Asian" male. *Id.* ¶ 11. Plaintiff's second level supervisor in APHB from January 2018 through September 2018 was Michael Franovich. *Id.* ¶ 12.

Plaintiff alleges that, during her detail, a fellow employee in the APHB, Jeff Circle, subjected her to incidents of unlawful harassment based on her race. *Id.* ¶ 13. Specifically, throughout Plaintiff's two-year detail, she witnessed and was subject to Mr. Circle's "persistent belittling mockery of his Asian colleagues[.]" *Id.* ¶ 24. For example, on multiple occasions, Plaintiff witnessed Mr. Circle mimic an Asian accent to mock Asian-American branch members, including Mr. Weerakkody, the Branch Chief. *Id.* ¶¶ 17, 23. Mr. Circle frequently referred to the way "they" talk, referring to NRC employees with Asian accents. *Id.* ¶ 22. During branch meetings, Mr. Circle made fun of Asian-Americans who were late to the meetings and punctuated his jokes by looking under the table "to mock their short stature." *Id.* ¶¶ 18–19. Mr. Circle did not make the same or similar jokes about non-Asian employees. *Id.* ¶ 20. Mr. Circle also mocked Asian-American colleagues during individual, private meetings. *Id.* ¶ 21.

Additionally, there was an incident that took place during a fire drill. Specifically, while

the NRC was conducting a fire drill, Plaintiff was delayed in finding her "group," which was led by Mr. Circle. *Id.* ¶ 25. When Plaintiff eventually found her "group," Mr. Circle, "bending over at his waist, leaned in and berated her in an intimidating and threatening manner[.]" *Id.* ¶ 26. According to Plaintiff, the conduct was so extreme that, when she recounted the incident to a union member, the union member advised Plaintiff that she should have reported him to security staff. *Id.* ¶ 27.

Between 2016 and 2018, Plaintiff informed her supervisors at NRC multiple times about Mr. Circle's conduct, but her supervisors failed to take any corrective action. *Id.* ¶¶ 28–37. Plaintiff complained several times to Mr. Weerakkody, both in one-on-one and formal meetings, that Mr. Circle repeatedly mocked Asian accents, made fun of Asian-Americans during branch meetings, and ridiculed the stature of Asian-Americans. *Id.* ¶¶ 28–29. Plaintiff also told Mr. Weerakkody during these meetings that she was offended by Mr. Circle's conduct. *Id.* ¶ 29. However, Mr. Weerakkody responded by telling Plaintiff that she should "just forget about it" and "let it go" because he was not offended by it. *Id.* ¶ 30. Despite Mr. Weerakkody's response, Plaintiff informed Mr. Weerakkody that, if Mr. Circle continued his inappropriate conduct, she would report the conduct to the union, which she eventually did. *Id.* ¶ 31. Plaintiff also reported Mr. Circle's "intimidating and threatening" behavior at the fire drill to Mr. Weerakkody. *Id.* ¶ 34. However, to Plaintiff's knowledge, Mr. Weerakkody did not take any steps to prevent the threatening behavior or to discipline Mr. Circle. *Id.* ¶ 35. Finally, Plaintiff used a voluntary performance appraisal questionnaire to inform her superiors at NRC about Mr. Circle's conduct. *Id.* ¶¶ 32–33. In the appraisal questionnaire's "180° feedback to the supervisor" question, Plaintiff specifically discussed Mr. Circle's behavior and her frustration that Mr. Weerakkody did not take any steps to prevent or correct the harassing conduct. *Id.* ¶ 35.

Plaintiff also described Mr. Circle's behavior to other branch members, including two Asian-American branch members, Mr. Donald Chung and Mr. Ching Ng. *Id.* ¶ 38. Moreover, other branch members personally witnessed Mr. Circle's conduct. For example, Mr. Ng was subjected to Mr. Circle's harassment and heard Mr. Circle make statements directed at other Asian-Americans that were derogatory or involved negative stereotypes, including stereotypes about height and derogatory statements about Asian females. *Id.* ¶¶ 39–41. Mr. Jerrod Demers, another branch member, also witnessed several incidents in Mr. Circle's office and in branch meetings where, when someone would mention Mr. Weerakkody, See-Meng Wong, or Plaintiff—all Asian-American branch members—Mr. Circle would look underneath the table and remark in a joking manner that he did not see them. *Id.* ¶¶ 19, 47.[3] Mr. Antonios Zoulis, another of Plaintiff's colleagues, admitted that Mr. Circle has made many "off-color remarks and has rubbed staff and others the wrong way on several occasions." *Id.* ¶ 49. Moreover, after a disagreement between Plaintiff and Mr. Circle, Mr. Zoulis informed Plaintiff that Mr. Circle was "out to get" her and that Mr. Circle "was going to sit on" Plaintiff. *Id.* ¶ 50. Mr. Zoulis also implied to Plaintiff that during his conversation with Mr. Circle, Mr. Circle made "negative and racially charged comments about her." *Id.* ¶ 51. Finally, Mr. Chung, the former Acting Branch Chief in the APHB, witnessed Mr. Circle's behavior on several occasions. *Id.* ¶¶ 42, 45.

Before Plaintiff's detail in the APHB ended in September 2018, Plaintiff obtained counseling from the union and then brought her concerns to NRC's EEO office and to the NRC's Office of the Chief Human Capital Officer ("OCHCO"). *Id.* ¶ 15. In October 2018, after Plaintiff's detail had ended, Plaintiff had her final performance appraisal with Mr. Fong, the

---

[3] Mr. Demers also witnessed Mr. Circle frequently making derogatory comments regarding Plaintiff's level of plant experience in technical discussions. ECF No. 17 ¶ 46.

Branch Chief of APHB at the time that Plaintiff's detail ended. *Id.* ¶ 54. During that meeting, Plaintiff and Mr. Fong discussed Plaintiff's claims against Mr. Circle and her actions with the union and OCHCO. *Id.* However, "despite having made complaints about Jeff Circle's harassing and discriminatory conduct, up to and including physical intimidation," to Plaintiff's knowledge, the NRC had not taken any preventative or corrective action as of the time of Plaintiff's final performance appraisal. *Id.* ¶ 55.

Sometime before October 1, 2019, the OCHCO concluded an inquiry into Plaintiff's allegations under the NRC's Anti-Harassment Policy and found Mr. Circle's conduct violated that policy. *Id.* ¶ 16; ECF No. 21-3 at 22 n.13.[4] However, on October 18, 2019, the NRC issued a final agency decision regarding Plaintiff's complaint with the NRC's EEO office. ECF No. 21-3 at 35. That decision stated that Plaintiff was "not subjected to unlawful discrimination or harassment based on race" and "no relief [was] warranted." *Id.* at 33. Plaintiff received NRC's Final Agency Decision on October 21, 2019. ECF No. 17 ¶ 4.

On January 16, 2020, within 90 days of her receipt of NRC's final agency decision, Plaintiff initiated the instant action in this Court. ECF No. 1. Plaintiff then filed a Consent Motion for Leave to Amend on September 8, 2020, ECF No. 14, which the Court granted on September 9, 2020, ECF No. 16, making Plaintiff's Amended Complaint, ECF No. 17, the operative complaint. Defendant filed a Consent Motion for Extension of Time to Respond to Amended Complaint on October 21, 2020, ECF No. 20, and filed the instant Motion on November 3, 2020, ECF No. 21. Plaintiff then filed a Consent Motion for Extension of Time to Respond to Defendant's Motion to Dismiss/Motion for Summary Judgment on November 16,

---

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

2020, ECF No. 22, and filed her Opposition and a Rule 56(d) Declaration on December 15,

2020, ECF No. 24; ECF No. 24-1. Defendant replied on January 22, 2021, ECF No. 29, after

filing a Consent Motion for Extension of Time to File Reply Memorandum on January 13, 2021,

ECF No. 28.

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing

*Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555 ("[A]

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve

contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v.

City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks

omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true

all of the factual allegations contained in the complaint[,]" and must "draw all reasonable

inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon

Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted).

The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### B.    Motion for Summary Judgment

If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. When the moving party styles its motion as a "Motion to Dismiss or for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving

7

party's case, the burden shifts to the nonmoving party to identify specific facts showing that

there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322–24. A material fact is one

that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto

Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986)). A dispute of material fact is only "genuine" if "sufficient evidence favoring the

nonmoving party" exists for the trier of fact "to return a verdict for that party." *Anderson*, 477

U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact

through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769

F.2d 213, 214 (4th Cir. 1985) (citation omitted). When ruling on a motion for summary

judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are

to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citation omitted).

However, while the Court may rule on a motion for summary judgment prior to

commencement of discovery, *see, e.g.*, *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d

283, 286 (2d Cir. 2000), Federal Rule of Civil Procedure 56(d) "mandates that summary

judgment be denied when the nonmovant has not had the opportunity to discover information

that is essential to his opposition." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (internal

quotation marks and citation omitted). To obtain Rule 56(d) relief, the non-moving party bears

the burden of showing how discovery "could possibly create a genuine issue of material fact

sufficient . . . to survive summary judgment, or otherwise affect the court's analysis." *Poindexter

v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015) (internal quotation marks and

citation omitted). Further, the Court is not prohibited from granting a motion for summary

judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the

court "shall grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact" without distinguishing pre-or post-discovery).

In the instant case, Plaintiff filed a Rule 56(d) Declaration identifying the discovery needed to support each element of Plaintiff's Title VII hostile work environment claim other than the "unwelcome conduct" element, the existence of which is not in dispute. ECF No. 24-1. Because Plaintiff has shown how discovery "could possibly create a genuine issue of material fact sufficient . . . to survive summary judgment," the Court declines to exercise its authority under Fed. R. Civ. P. 12(d) to convert Defendant's Motion into a motion for summary judgment.

## III.   DISCUSSION

In the instant action, Plaintiff claims that Defendant subjected her to "a hostile work environment based on race in violation of Title VII of the Civil Rights Act of 1964." *Id.* ¶ 60. Defendant responds that the Court should dismiss Plaintiff's Title VII claim or grant summary judgment in Defendant's favor because: (1) "Plaintiff does not allege a cognizable hostile work environment claim" because she has not sufficiently alleged conduct "severe or pervasive enough" nor has she presented evidence that Mr. Circle's conduct "altered the terms or conditions of her employment[,]" ECF No. 21-1 at 8, 10–11; (2) "[n]one of the allegedly hostile conduct was directed at Plaintiff[,]" *id.* at 11; (3) "[a]n anti-harassment policy violation is not dispositive of a hostile work environment[,]" *id.* at 12; and (4) "[t]he conduct alleged should not be attributed to the [NRC,]" *id.*

Title VII makes it illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" 42 U.S.C. § 2000e-2(a). "Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 313 (4th Cir. 2008) (internal quotation marks

and citation omitted). Thus, an employer contravenes § 2000e-2(a) by, *inter alia*, requiring an employee to work in a racially hostile environment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–67 (1986) ("[T]he phrase 'terms, conditions or privileges of employment' in [Title VII] is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with ethnic or racial discrimination. . . . One can readily envision working environments so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers. . . ." (alterations in original) (citation omitted)).

A racially hostile working environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To plead a hostile work environment claim under Title VII, the plaintiff "must show that there is (1) unwelcome conduct; (2) that is based on plaintiff's race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Id.* (ellipsis omitted) (citation omitted).

A.      **Unwelcome Conduct**

"The first element of a hostile environment claim, unwelcome conduct, is not a high hurdle." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 328 (4th Cir. 2018). As the Fourth Circuit has "repeatedly held, an employee can demonstrate that certain conduct is unwelcome simply by voicing her objection to the alleged harasser or to the employer." *Id.* at 328–29 (citation omitted). Additionally, "the nature of the conduct may indicate whether or not the

10

conduct is unwelcome." *Id.* at 329 (citation omitted).

In the instant case, Plaintiff alleges that she complained multiple times about Mr. Circle's conduct both to her supervisor, Mr. Weerakkody, and her fellow branch members. ECF No. 17 ¶¶ 27–35, 38 ("Ms. Ki reported to Mr. Weerakkody several times . . . that she was offended by [Mr. Circle's] conduct."). "Because [Plaintiff] indicated to both management and h[er] coworkers that [s]he found [Mr. Circle's racially] demeaning conduct to be offensive, [Plaintiff] 'has sufficiently alleged that [the] harassment was unwelcome.'" *Sunbelt Rentals, Inc.*, 521 F.3d at 314 (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000)); *see also Tinoco v. Thesis Painting, Inc.*, No. GJH-16-752, 2018 WL 4599677, at *7 (D. Md. Sept. 24, 2018).

**B.     Race-Based Conduct**

"To satisfy the second element of a hostile work environment claim, the plaintiff must demonstrate that [s]he was harassed or otherwise discriminated against 'because of' h[er] protected class." *Brown v. Bratton*, No. ELH-19-1450, 2020 WL 886142, at *14 (D. Md. Feb. 21, 2020). Thus, in the instant case, Plaintiff "must show that 'but for' h[er] race, [s]he would not have been the victim of the alleged discrimination." *Smith v. Allied Sys., Ltd.*, No. CCB-99-224, 2000 WL 708909, at *5 (D. Md. May 8, 2000) (citing *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998)). "[H]arassment due to personality conflicts will not suffice. Some persons, for reasons wholly unrelated to the plaintiff's protected class, manage to make themselves disliked." *Brown*, 2020 WL 886142, at *14 (internal quotation marks and brackets omitted) (quoting *Ziskie v. Mineta*, 547 F.3d 220, 226 (4th Cir. 2008)).

In the instant case, Plaintiff is an Asian-American woman, and she has sufficiently alleged that Mr. Circle's unwelcome conduct was based on her race. First, Plaintiff has alleged

multiple incidents of offensive conduct that were unambiguously based on race. Specifically, Plaintiff alleges that, during the two years Plaintiff was on detail to APHB, Mr. Conduct frequently "mocked Asian employees in their accents and heights[.]" ECF No. 17 ¶ 1; *see, e.g.*, *id.* ¶ 17 ("Throughout Ms. Ki's two-year detail, Ms. Ki witnessed Mr. Circle mimicking an Asian accent[.]"); *id.* ¶¶ 18–20, 47 (alleging that, during branch meetings, Mr. Circle would look under the table for Asian-American colleagues, including Ms. Ki, mocking their short stature, but did not make these jokes about other non-Asian employees); *id.* ¶ 22 ("Mr. Circle frequently referred to the way 'they' talk, referring to NRC employees with Asian accents."). Mocking or making derogatory comments regarding a colleague's accent is explicitly race-based conduct. *See Meng v. Ipanema Shoe Corp.*, 73 F. Supp. 2d 392, 398 (S.D.N.Y. 1999) (finding that discrimination based on plaintiff's Chinese accent provided support to an inference that plaintiff was subject to unlawful racial/national origin discrimination for being an Asian woman and concluding that plaintiff had presented the elements of a prima facie case of racial/national origin discrimination under Title VII); *cf. Iyoha v. Architect of the Capitol*, 927 F.3d 561, 567 (D.C. Cir. 2019) ("Although . . . Title VII do[es] not explicitly bar discrimination on the basis of foreign accent, a foreign accent and national origin are often intertwined, and courts can look to evidence of discrimination on the basis of one's accent in support of a claim of national origin discrimination." (citation omitted)). Similarly, mocking or making derogatory comments about a colleague's physical characteristics, such as height, that are stereotypical of that colleague's race can be considered race-based conduct. *See Zapata v. IBP, Inc.*, 162 F.R.D. 359, 360 (D. Kan. 1995) ("Race suggests . . . human physical characteristics like skin and hair color, body size, and facial features typical of persons of a particular culture or social background."); *Shipley v. Dugan*, 874 F. Supp. 933, 941 n.6 (S.D. Ind. 1995) (stating that the plaintiff's allegation that she

was discriminated against based on "certain physical . . . characteristics she shares with her ancestors of African origin" was an allegation that she was discriminated against because she was African-American). Thus, Plaintiff has alleged that she witnessed and was subject to unwelcome mockery based on race.

Additionally, Plaintiff also alleges that "Mr. Circle's conduct extended beyond persistent belittling mockery of his Asian colleagues" when "Mr. Circle berated and physically intimidated [Plaintiff] in connection to a fire drill far beyond the bounds of professionalism and treated [Plaintiff] differently than he treated others[.]" ECF No. 17 ¶ 24. Specifically, when Plaintiff was delayed in finding her group during a fire drill, a group led by Mr. Circle, Mr. Circle, "bending over at the waist, leaned in and berated her in an intimating and threatening manner." *Id.* ¶¶ 25–26. Plaintiff alleges that this incident was also race-based, despite the absence of any explicit reference to her race.

"In determining whether offensive conduct can be attributed to discrimination against the employee's race or other protected status, courts must view the behavior in light of the social context surrounding the actions." *Strothers*, 895 F.3d at 329. "[H]arassment need not be accompanied by a contemporaneous statement of animus to be actionable under Title VII— rather, the connection between animus and conduct may be inferred from the totality of the circumstances." *Id.* at 330–31 (citation omitted) (finding that the harasser's seemingly race-neutral conduct—such as accusing the plaintiff of violating the dress code, tracking the plaintiff's every movement, and giving the plaintiff negative evaluations—was racially motivated based on, *inter alia*, the harasser's history of harassing black employees); *see, e.g.*, *Dugandzic v. Nike, Inc.*, 807 F. App'x 971, 976 (11th Cir. 2020) ("Viewing the facts in the light most favorable to [the plaintiff], based on his supervisor's mocking of [the plaintiff's] accent, it

is a permissible view of the evidence that his supervisor's other allegedly harassing conduct was also motivated by his national origin." (citation omitted)); *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 400–01 (5th Cir. 2007) (finding that, based on the harasser's other actions, a factfinder could reasonably conclude that the harasser repeatedly banging on the glass partition of the plaintiff's office, in order to startle him, was also motivated by animus stemming from the plaintiff's protected class). Thus, making all reasonable inferences in Plaintiff's favor, based on Mr. Circle's frequent mocking of his Asian-American colleagues' accents and heights, it is plausible that Mr. Circle's conduct towards Plaintiff at the fire drill was also motivated by Plaintiff's race. *See Evans v. Md. Nat'l Cap. Parks & Plan. Comm'n*, No. TDC-19-2551, 2020 WL 6703718, at *5 (D. Md. Nov. 13, 2020) ("Even without specific allegations connecting such racially hostile language to specific incidents of unwelcome conduct, the assertion that [the harassers] used such language in the workplace both supports the inference that the unwelcome conduct directed at [the plaintiff] was based on racial animus and itself provides additional evidence of a racially charged hostile work environment.").

### C.    Severe or Pervasive Conduct

"The third element of a hostile environment claim requires that the offending conduct be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Strothers*, 895 F.3d at 331 (internal quotation marks and citation omitted). In the Fourth Circuit, "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." *Sunbelt Rentals, Inc.*, 521 F.3d at 315. As the Fourth Circuit has observed:

> Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than rude treatment by coworkers . . . are not actionable under Title VII.

*Id.* at 315–16 (cleaned up) (internal citation omitted). However, in order to satisfy the "severe or

pervasive" test, "[t]he behavior need not be both severe and pervasive: the more severe the conduct, the less pervasive the plaintiff need prove that it is." *Allen v. TV One, LLC*, No. DKC-15-1960, 2017 WL 4404408, at *7 (D. Md. Oct. 4, 2017) (internal quotation marks omitted) (quoting *Reed v. Airtran Airways*, 531 F. Supp. 2d 660, 669 n.15 (D. Md. 2008)). Ultimately, "the question of whether harassment was sufficiently severe or pervasive is quintessentially a question of fact." *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010) (internal quotation marks and citation omitted).

The "severe or pervasive" element of a Title VII hostile work environment claim has both subjective and objective components. *Sunbelt Rentals, Inc.*, 521 F.3d at 315. "First, the plaintiff must show that [s]he 'subjectively perceive[d] the environment to be abusive.'" *Id.* (quoting *Harris*, 510 U.S. at 21–22). Then, "the plaintiff must demonstrate that the conduct was such that 'a reasonable person in the plaintiff's position' would have found the environment objectively hostile or abusive.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998)).

### 1.    Subjective Inquiry

Plaintiff's pleadings satisfy the subjective component of the "severe or pervasive" element of her Title VII claim. Plaintiff alleges that she complained about Mr. Circle's repeated mocking of Asian accents and the short stature of Asian-Americans to her supervisor, Mr. Weerakkody, multiple times throughout her detail with the APHB and informed him that she was offended by Mr. Circle's conduct. ECF No. 17 ¶¶ 28, 33. In fact, Plaintiff alleges that she informed Mr. Weerakkody that she "was so offended . . . that if [Mr.] Circle continued his harassment she would report the conduct to the union, which she eventually did." *Id.* ¶ 31. Additionally, Plaintiff's Amended Complaint states that she complained about Mr. Circle's

conduct to other colleagues, *id.* ¶¶ 43, 48, and ultimately brought her concerns to the NRC's EEO office and to the NRC's OCHCO, *id.* ¶ 15. Finally, Plaintiff claims that, as a result of the alleged harassment, she "suffered and continues to suffer pain, suffering, humiliation and mental distress." *Id.* ¶ 61. The aforementioned allegations satisfy the subjective component of the "severe or pervasive" element of a Title VII hostile work environment claim. *See E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 176 (4th Cir. 2009) (finding that a plaintiff's emotional distress and complaints to supervisors met the subjective component); *Evans*, 2020 WL 6703718, at *6 ("Where [the plaintiff] filed an internal complaint about the harassment and has alleged that it caused him emotional distress . . . he has satisfied th[e] [subjective] requirement.").

### 2. Objective Inquiry

Plaintiff has also alleged sufficient facts to satisfy the objective component of the "severe or pervasive" test. "Whether the environment is objectively hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's position.'" *Boyer-Liberto*, 786 F.3d at 277 (citation omitted). However, "[t]his objective inquiry is not, and by its nature cannot be, a mathematically precise test." *Sunbelt Rentals, Inc.*, 521 F.3d at 315 (internal quotation marks omitted) (quoting *Harris*, 510 U.S. at 22). "Rather, when determining whether the harassing conduct was objectively 'severe or pervasive,' we must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks omitted) (quoting *Harris*, 510 U.S. at 23). "No single factor is dispositive, as the real social impact of workplace behavior depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed[.]" *Id.*

(cleaned up) (citations omitted).

As discussed above, the offensive conduct "need not be both severe and pervasive: the more severe the conduct, the less pervasive the plaintiff need prove that it is." *Allen*, 2017 WL 4404408, at *7 (internal quotation marks omitted) (quoting *Reed*, 531 F. Supp. 2d at 669 n.15). "To be sure, viable hostile work environment claims often involve repeated [*i.e.*, pervasive] conduct . . . . That is because in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Boyer-Liberto*, 786 F.3d at 277 (internal quotation marks and citations omitted)). To be pervasive, such conduct must be habitual; "simple teasing, off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations and quotation marks omitted). However, "an isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious." *Boyer-Liberto*, 786 F.3d at 277 (cleaned up) (citation omitted). Such incidents are found to be severe when they have a threatening, degrading, or humiliating character, *id.* at 280, and do more than "give rise to bruised or wounded feelings," *Sunbelt Rentals, Inc.*, 521 F.3d at 315.

In the instant case, Plaintiff has plausibly alleged discriminatory conduct that is sufficiently "severe or pervasive." Plaintiff alleges that: (1) "throughout" her two-year detail with the APHB, she witnessed Mr. Circle mimicking an Asian accent, ECF No. 17 ¶ 17; (2) during branch meetings and individual private meetings in Mr. Circle's office, Mr. Circle mocked Asian-American colleagues', including Plaintiff's, stature by looking under the table for them when they were late or someone mentioned their names, *id.* ¶¶ 18–21, 47; (3) "Mr. Circle frequently referred to the way 'they' talk, referring to NRC employees with Asian accents[,]" *id.*

17

¶ 22; and (4) "Mr. Circle berated and physically intimidated [Plaintiff] in connection to a fire drill far beyond the bounds of professionalism and treated [Plaintiff] differently than he treated others[,]" *id.* ¶¶ 24, 26; *Stewart v. MTR Gaming Grp., Inc.*, 581 F. App'x 245, 247 (4th Cir. 2014) ("Facially neutral incidents may be included . . . . among the 'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on [the protected class]." (quoting *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002)). Additionally, Plaintiff alleges that other NRC employees witnessed Mr. Circle's behavior, including Mr. Ng and Mr. Chung. *Id.* ¶ 38. According to Plaintiff, Mr. Ng "heard Mr. Circle make statements that were derogatory or involved negative stereotypes, including some regarding height," and has heard that "Mr. Circle made derogatory statements specifically about Asian females[.]" *Id.* ¶ 40–41. Similarly, according to Plaintiff, Mr. Chung has stated "I [] witness[ed] . . . multiple occasions where Mr. Circle made derogatory remarks regarding staff from other cultures."[5] *Id.* ¶ 45. Finally, Plaintiff's coworker, Mr. Zoulis, told Plaintiff that, after a dispute between Plaintiff and Mr. Circle, Mr. Circle had threatened that he "out to get [Plaintiff] and that [he] was going to sit on [Plaintiff]." *Id.* ¶ 50. Mr. Zoulis also implied that Mr. Circle had made negative and racially charged comments about Plaintiff. *Id.* ¶ 51.

      The Court concludes "that the environment alleged to have been created is just the sort

---

[5] Because "[d]etermining whether workplace harassment was severe or pervasive enough to be actionable depends on the totality of the circumstances[,]" offensive remarks or behavior do not have to "be directed at individuals who are members of the plaintiff's own protected class." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000), *superseded by statute on other grounds*. Rather, "[r]emarks targeting members of other minorities . . . may contribute to the overall hostility of the working environment for a minority employee." *Id.* Moreover, the plaintiff need not even be present at the time of some of the racial remarks for the those remarks to support a finding that "persistently offensive conduct created an overall 'hostile or abusive environment[.]' " *Id.* at 571 (quoting *Harris*, 510 U.S. at 21); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 71 (2d Cir. 2000) ("[T]he fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor also can impact the work environment." (citation omitted)).

that 'can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers,' contrary to 'Title VII's broad rule of workplace equality[,]'" and thus Plaintiff's allegations satisfy the objective inquiry. *Gregory v. Daly*, 243 F.3d 687, 693–94 (2d Cir. 2001), *as amended* (Apr. 20, 2001) (quoting *Harris*, 510 U.S. at 22); *see Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70–71 (2d Cir. 2000) (denying the defendant's motion for summary judgment where "plaintiffs were subjected to, or at the very least aware of, a stream of racially offensive comments over the span of two to three months" and one comment was "physically threatening"); *Haynes v. G & R Trucking, Inc.*, No. TJS-19-1223, 2020 WL 5759761, at *8 (D. Md. Sept. 28, 2020) (denying the defendants' motion for summary judgment as to the plaintiff's Title VII hostile work environment claim where "there [was] some evidence that [the defendant] made demeaning comments and racist jokes on a regular basis[,]" even if though the jokes did not use racial epithets and there was no evidence that the racist jokes actually interfered with the plaintiff's work); *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 778 (D. Md. 2010) (holding that the alleged abuse was sufficiently frequent to support a claim where the court "identified approximately ten incidents of racial harassment over the course of two years").[6] While it may be true that the harassment in the instant case does not appear to be as severe as the conduct in many other cases, *see, e.g.*, *Amirmokri v. Balt. Gas & Elec. Co.*, 60 F.3d 1126, 1131 (4th Cir. 1995) (finding a hostile work environment where Iranian plaintiff was called 'the local terrorist' on a daily basis), "the appalling conduct alleged in prior cases should not be taken to mark the boundary of what is actionable." *Whidbee*, 223 F.3d at 70 (internal quotation marks and citation

---

[6] The Court's conclusion is strengthened by Plaintiff's allegation that the fire drill incident, during which Mr. Circle bent down to get in Plaintiff's space and yelled at her in front of her colleagues, was severe enough to warrant other co-workers advising Plaintiff she should have called security or potentially the police. ECF No. 17 ¶¶ 24, 26–27.

omitted). This is especially true at this early stage of litigation, before Plaintiff has had an opportunity for discovery. Plaintiff has set forth sufficient factual allegations for the Court to conclude that it is at least plausible that the offensive conduct alleged rose to the level of being "severe or pervasive[.]"[7] *See Iqbal*, 556 U.S. at 678.

### D.   Conduct Imputable to Employer

"The final element of a hostile environment claim requires that the offensive conduct be imputable to the employer." *Strothers*, 895 F.3d at 332 (citation omitted). "If the harasser is a co-worker," as is the case here, "the employee must show that the employer was 'negligent in controlling working conditions'—that is, the employer 'knew or should have known about the harassment and failed to take [prompt,] effective action to stop it.'" *Id.* (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013); *Amirmokri*, 60 F.3d at 1130 ("Liability may be imputed to the employer if the employer had actual or constructive knowledge of the existence of a hostile working environment and took no prompt and adequate remedial action." (citation omitted)). "Knowledge of harassment can be imputed to an employer if a reasonable person, intent on complying with Title VII, would have known about the harassment." *Sunbelt Rentals, Inc.*, 521 F.3d at 319 (citation omitted). "Effective action" means that, "[o]nce the employer has notice, then it must respond with remedial action reasonably calculated to end the harassment." *Id.* (internal quotation marks and citation omitted). Additionally, that remedial action must be

---

[7] Defendant argues that there was not a sufficiently severe or pervasive hostile environment because "[n]one of the allegedly hostile conduct was directed at Plaintiff." ECF No. 21-1 at 11–12. First, Plaintiff has alleged that some of Mr. Circle's offensive conduct was directed at her. *See, e.g.*, ECF No. 17 ¶¶ 24, 26, 47. Second, the Fourth Circuit has found that "comments made to others are also relevant to determining whether [the plaintiff] was subjected to severe or pervasive [] harassment" because "we are, after all, concerned with the environment of workplace hostility, and whatever the contours of one's environment, they surely may exceed the individual dynamic between complainant and h[er] coworkers." *Sunbelt Rentals, Inc.*, 521 F.3d at 317 (cleaned up) (citations omitted); *see also Cruz*, 202 F.3d at 570 ("Because the crucial inquiry focuses on the nature of the workplace environment as a whole, a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim.").

prompt. *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 424 (4th Cir. 2014).

In the instant case, Plaintiff verbally complained to her supervisor, Mr. Weerakkody, multiple times—including in one-on-one meetings or more formal meetings, such as a mid-year or annual appraisals—that she was offended by Mr. Circle's harassing conduct. ECF No. 17 ¶¶ 28–29. However, Mr. Weerakkody told Plaintiff that she "should 'just forget about it' and 'let it go' because he himself was not offended by it." *Id.* ¶ 30. Plaintiff also complained in writing by filling out a voluntary performance appraisal questionnaire in which she "specifically discussed [Mr.] Circle's conduct and her frustration that [Mr.] Weerakkody did not take any steps to prevent or correct [the] harassing conduct." *Id.* ¶¶ 32, 33. Finally, Plaintiff complained to Mr. Weerakkody about Mr. Circle's conduct during the fire drill incident, but, to Plaintiff's knowledge, Mr. "Weerakkody took no steps to prevent the threatening behavior or discipline [Mr.] Circle whatsoever." *Id.* ¶¶ 34–35. By the time Plaintiff's detail with the APHB had ended, "[d]espite having had made complaints about [Mr.] Circle's harassing and discriminatory conduct, up to and including physical intimidation, [Plaintiff] was unaware of any preventative or corrective action taken by NRC[.]" *Id.* ¶ 55.

Because Plaintiff "notified supervisors about the alleged harassment on numerous occasions, both verbally and in writing, and because [the NRC] failed to take prompt corrective action, [the Court] find[s] [Plaintiff] has satisfied this [final] requirement." *Sunbelt Rentals, Inc.*, 521 F.3d at 319–20 (finding a reasonable jury could determine the harassment was imputable to the employer—even where the employer eventually took some corrective steps—where the plaintiff complained to his supervisor after most of the harassing incidents and there was little evidence that the supervisor "did anything meaningful in response to [the plaintiff's] verbal complaints"); *Amirmokri*, 60 F.3d at 1131–32 (finding that the employer's "action falls far short"

where the employer investigated the plaintiff's complaint promptly but did not pursue the matter further; did not interview other employees other than the harasser and other supervisors; did not warn, reprimand, or counsel the harasser; and did not separate the plaintiff from the harasser as the plaintiff requested).

***

Plaintiff has adequately pleaded all four elements of a Title VII racially hostile work environment claim such that her Title VII claim can survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). The Court thus denies Defendant's Motion to Dismiss or for Summary Judgment, ECF No. 21.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss or for Summary Judgment, ECF No. 21, is denied. A separate Order shall issue.

Date: <u>August    27 , 2021</u>                    <u>   /s/                              </u>
                                                       GEORGE J. HAZEL
                                                       United States District Judge